[Cite as *In re M.W.*, 2019-Ohio-140.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IN RE: M.W.

: 
: 
: 
:    Appellate Case Nos. 28046 & 28065
: 
:    Trial Court Case No. 2015-1370
: 
:    (Juvenile Appeal from
:    Common Pleas Court)
: 
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of January, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Appellee Montgomery County Children Services

SARA M. BARRY, Atty. Reg. No. 0090909, 1139 Holly Avenue, Dayton, Ohio 45410
    Attorney for Appellant-Mother

ROBERT BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
    Attorney for Appellant-Father

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** This matter is before the Court on Father's June 22, 2018 Notice of Appeal and Mother's July 12, 2018 Notice of Appeal. Father and Mother appeal from the June 12, 2018 judgment of the juvenile court that overruled Father's and Mother's objections to a magistrate's decision and granted permanent custody of their child, M.W., to the Montgomery County Department of Job and Family Services - Children Services Division ("MCCS"). The juvenile court concluded that the State had presented clear and convincing evidence that permanent custody was in the best interest of the child. We hereby affirm the judgment of the juvenile court.

**{¶ 2}** MCCS filed a dependency complaint on March 10, 2015, alleging in part that Mother had substance abuse issues and that the agency became involved with the family after receiving a sexual abuse referral that M.W. was victimized by a non-related minor male. Although the sexual abuse referral was not substantiated, in the course of the investigation, Mother was arrested for solicitation and possessing criminal tools. The complaint stated that, after Mother was released from jail, in the course of an unannounced home visit by MCCS in February 2015, Mother admitted to relapsing on heroin, reported that she was being evicted from her housing, and reported that she had no one to care for her child while she sought substance abuse treatment. M.W. was placed in the interim temporary custody of MCCS.

**{¶ 3}** After an adjudicatory and dispositional hearing on May 6, 2015, M.W. was found to be dependent in a "Magistrate's Decision and Judge's Order of Adjudication and Disposition of Temporary Custody" issued on May 28, 2015. The Court found that that a case plan had been developed, that neither parent had remedied the concerns that

resulted in the child's removal, and that "mother and father need to address housing issues along with substance abuse, mental health, and domestic violence. Neither parent is in a position to care for the child. Mother and Father are in agreement with temporary custody to [MCCS.]"

{¶ 4} On January 25, 2016, MCCS filed a motion for an extension of temporary custody. After a hearing on March 2, 2016, the extension was granted. The order provided that "neither parent has remedied the concerns that resulted in the child's removal from the home. The mother continues to struggle with her addiction and does not have stable housing. The father needs to address the recommendations of his recent assessments." According to the order, the parents agreed with the extension of temporary custody to MCCS.

{¶ 5} On July 19, 2016, MCCS filed a motion for permanent custody of M.W. On February 7, 2017, Father filed a "Petition for Legal Custody." On February 19, 2017, the trial court denied MCCS's motion for permanent custody.

{¶ 6} On April 19, 2017, MCCS filed a second motion for permanent custody of M.W. A hearing was held on August 2, 2017. On August 4, 2017, the trial court granted permanent custody to MCCS. The magistrate found that Mother had "made very minimal progress addressing case plan concerns," whereas Father's progress was "much more substantial." With respect to Father, the magistrate's decision stated in relevant part as follows:

● Father has made significant progress addressing many of his case plan goals. He has completed a batterer's assessment with no recommendations for treatment. He also completed a parenting program.

Moreover, he completed a substance abuse assessment with no recommendations although father admits to marijuana use at least two to three times per week. Father is involved in mental health services at the Wellness Card and is prescribed psychotropic medications. Father's psychiatrist did recommend that father engage in counseling but father has not been consistent with this service during 2017. Father did not attend counseling for about 3-4 months in 2017 because he did not feel that the therapist was listening to him. He did address this concern with the therapist and reengaged with counseling around May 2017.

● When the child was removed in 2015, the father was residing in a studio apartment at the Veteran's Administration which was not suitable for the child. Father did obtain a Section 8 voucher and secured an apartment on Bruce Avenue in Dayton, Ohio around May 2015. In early 2017, father failed to renew his lease on Bruce Avenue and became homeless. Since early 2017, father has been residing with friends and family members. He is currently residing with his cousin and his cousin's wife on Northwoods Ave[.] in a 2 bedroom apartment. The current caseworker and GAL have spoken to father many times about the housing issue and father has indicated that he is attempting to secure a voucher through Section 8 for larger housing that could accommodate this child and this child's 2 half-sisters who are also in foster care. The Agency did provide father with a letter to assist him with housing and the father has spoken to Greater Dayton Premiere Housing about a voucher. Father has also identified a

potential landlord who may be willing to rent to father. However, as of the date of this hearing, father does not have independent housing and his current living situation is not suitable for the child.

● In conclusion, the Court finds that neither parent has addressed their case plan concerns and demonstrated an ability to care for the child.

{¶ 7} On August 9, 2017, Father filed general objections to the magistrate's decision, and on August 10, 2017, MCCS filed a reply. On January 22, 2018, Father filed supplemental objections to the magistrate's decision, asserting that "[p]ermanency for the child could be achieved by placing him with his father" and that "the Magistrate abused her discretion by awarding permanent custody to MCCS as the decision was not supported by the evidence and testimony presented."

{¶ 8} On January 31, 2018, with leave of Court, Mother filed supplemental objections to the magistrate's decision. She asserted that "the Findings of Fact, filed along with the Magistrate's Decision, [were] incorrect." She incorporated by reference Father's memorandum in support of his objections.[1] On March 9, 2018, MCCS replied to these objections.

{¶ 9} In its judgment and ruling on the parties' objections, the juvenile court found that M.W. had been "in the temporary custody of a children service agency for more than 12 months in a 22 month period," as set forth in R.C.2151.414(B)(1)(d). The court also concluded that "the State presented clear and convincing evidence that permanent custody [was] in the best interest of the child." The juvenile court determined in relevant

---

[1] Mother's argument in her objections, as on appeal, seems to be limited to her belief that Father should have been awarded custody, not MCCS; she does not assert that she should have been awarded custody of the child herself.

part as follows:

> * * * Father has completed various case plan objectives. However, Father lacked independent, adequate housing throughout a portion of the case. Father provided MCCS with no less than 4 different residences where he was residing throughout the pendency of this matter. At the time of the August [2nd] hearing, more than 2 years after the case plan was developed, Father was still in the process of trying to acquire adequate housing and had not yet done so. Additionally, although Father completed a substance abuse assessment, the Court is unconvinced of its effectiveness. Father stated that he did not abuse any substances during the assessment and thus, received no recommendations for treatment. However, Father testified to his active and frequent marijuana use during the August [2], 2017 hearing. Father's admission coupled with his steadfast refusal to submit to drug screening throughout the case history suggests that the substance abuse concerns have not been remedied.

> While Father has made progress on his case plan, other districts have held that custody determinations go beyond the successful completion of a case plan. * * * The Court finds housing and substance abuse issues to be unresolved issues for Father, rendering him incapable of adequately caring for the child.

{¶ 10} Mother and Father each appealed from the juvenile court's judgment. They were initially represented by the same appointed counsel on appeal and filed identical briefs. Appointed counsel filed the briefs pursuant to *Anders v. California*, 386

U.S. 738, 87 S.Ct. 1396, 18 L.Ed. 493 (1967), asserting that he could "find no non-frivolous argument that the trial court abused its discretion in granting the State's motion for permanent custody," and that the appeals were "wholly frivolous." MCCS filed a response in each appeal asserting that, since Father filed a brief pursuant to *Anders*, "there are no arguments to which [it] can respond." (MCCS did not reference Mother's *Anders* brief.) This court informed Father and Mother that counsel had filed *Anders* briefs on their behalf and granted them 60 days to file pro se briefs. Mother subsequently filed a brief with the assistance of a different attorney, and Father filed a pro se brief.

{¶ 11} As a potential assignment of error, appointed counsel asserts as follows:

THE FINDING THAT PERMANENT CUSTODY TO MCCS IS IN THE BEST INTERESTS OF THE CHILD IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} However, according to counsel, the "record supports the trial court's findings that 'housing and substance abuse [are] unresolved issues for Father, rendering him incapable of adequately caring for the child' and those findings are not against the manifest weight of the evidence."

{¶ 13} Mother asserts the following assignment of error in her brief:

THE TRIAL COURT ERRED IN FINDING THAT CLEAR AND CONVINCING EVIDENCE SUPPORTED PERMANENT CUSTODY TO MCCS DUE TO LACK OF EVIDENCE OF ADOPTABILITY AS REQUIRED

BY R.C. 2151.413(E).[2]

{¶ 14}  Mother argues that MCCS failed to comply with a "statutory requirement" that it file an adoption plan and show that M.W. was adoptable.   She asserts that MCCS therefore failed to prove an award of permanent custody was in M.W.'s best interest and that custody should have been awarded to Father.   Father's pro se brief raises an identical assignment of error, and his argument is duplicative of Mother's, concluding that "MCCS's failure to confirm adoption plans for the child [was] dispositive."

{¶ 15}  In its brief, the State responds as follows:

> Specifically, Mother argues that MCCS['s] failure to complete the statutory requirement of filing an adoption plan along with the motion for permanent custody is dispositive and MCCS did not show by clear and convincing evidence that permanent custody was in the child's best interest. In support of her argument, Mother details several cases pertaining to the requirements of R.C. 2151.413(E).   However, every case Mother cites has been reversed by the Ohio Supreme Court in *In re T.R. et al*, 120 Ohio St.3d 136, 2008-Ohio-5219, 896 N.E.2d 1003.   Therefore, any reliance on the rationale in those cases is misplaced and erroneous.   Under current law, the "court is not required to factor adoption possibilities into its analysis." *Id*. at ¶ 16.   As there is no requirement to file an adoption plan along with the motion for permanent custody, MCCS presented clear and convincing

---

[2] "Any agency that files a motion for permanent custody under this section shall include in the case plan of the child who is the subject of the motion, a specific plan of the agency's actions to seek an adoptive family for the child and to prepare the child for adoption." R.C. 2151.413(E).

evidence that permanent custody was in the child's best interest.

{¶ 16} In her Reply Brief, Mother concedes that "part of her argument was, indeed, based on case law that was reversed by the Ohio Supreme Court, and respectfully apologizes for any reliance on the position that requirement of the filing of the case-plan for adoption was required at the permanent custody hearing." In a footnote counsel for Mother noted that she "has certainly learned a lesson as to the validity of the authority check of certain case law programs." Mother argued that, more importantly, she sought "to emphasize that the lack of a permanent placement for the child through adoption, as opposed to a secure placement with his biological parent, must be considered in determining his best interest under a R.C. 2151.414 analysis." According to Mother, "Father was present and ready to take care of [M.W.] on a permanent basis, but the trial court chose to leave the child in an unstable situation – contrary [to the] best interests of the child. The trial court erred and acted against the manifest weight of the evidence."

{¶ 17} We have thoroughly reviewed the entire record as required by *Anders v. California*, and we conclude that the evidence establishes that the grant of permanent custody to MCCS was not against the manifest weight of the evidence and was in M.W.'s best interest.

{¶ 18} As this Court has previously noted:

In a proceeding for the termination of parental rights, all of the court's findings must be supported by clear and convincing evidence. R.C. 2151.414(E); *In re J.R.*, Montgomery App. No. 21749, 2007-Ohio-186, at ¶ 9. An order terminating parental rights will not be overturned as being

against the manifest weight of the evidence if the record contains competent, credible evidence upon which the trial court could have formed a firm belief that the statutory elements for a termination of parental rights have been established. *In re Forest S.* (1995), 102 Ohio App.3d 338, 344-345. The credibility of the witnesses, and the weight to be given to their testimony, are matters for the trial court, as the finder or fact, to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231.

*In re S.G.*, 2d Dist. Greene No. 2009-CA-46, 2010-Ohio-2641, ¶ 12.

{¶ 19} It is undisputed that M.W. was in MCCS's custody for more than 12 consecutive months. Therefore, R.C. 2151.414(B)(1) permits the court to grant permanent custody to MCCS if the court determines, at a hearing held pursuant to R.C. 2151.414(A), by clear and convincing evidence, that it is the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody. *Id.* at ¶ 13. Further, " '[w]here children have been in agency custody for the required time, the agency does not have to establish that the child cannot be placed with a parent within a reasonable time or should not be placed with a parent. The only consideration is the child's best interests.' *In re A.U.*, Montgomery App. Nos. 20583, 20585, 2004-Ohio-6219, at ¶ 26." *Id.*

{¶ 20} Finally, this Court noted:

In determining what is in the best interests of the child, the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any

other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child, including whether the child has been in the temporary custody of public or private children services agencies for twelve or more months; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody. R.C. 2151.414(D).

*Id.* at ¶ 14.

{¶ 21} It is undisputed that one of Father's case plan objectives was to obtain and maintain appropriate housing. At the August 2, 2017 hearing, Father testified that he resided on Northwood Drive, with his cousin and his cousin's wife, in a two bedroom apartment. He stated that he moved from his own two-bedroom apartment when the lease was up so that he could find housing to accommodate M.W., as well as Father's two daughters who were also in MCCS's custody. On cross-examination by counsel for MCCS, Father stated that the Northwood Drive address was "just temporary." On cross-examination by counsel for M.W., Father testified that he had a "landlord * * * that's very compassionate, and for some reason she wants to do this for [M.W.], I suppose. She has a two-bedroom house," and "she wants me - - us to have it." According to Father, he is "like caught up in the middle, like you can't get custody without a two-bedroom. And I can't get a two-bedroom without custody." Father provided an address on "Klee Street" to the court, but he acknowledged that "couldn't set it up" for a caseworker to visit the residence. We conclude, as the juvenile court found, that at the time of the August 2, 2017 hearing, Father had failed to obtain stable, appropriate housing for M.W.

{¶ 22} Father further testified that he smoked marijuana "once every three days, once a week. Because I don't have much money." Cheryl Keyton, a caseworker at MCCS who was assigned to Father's case in April 2015, testified that random urine screening was also one of Father's case plan objectives, and that Father refused to submit to a court ordered drug screen in May 2015. She testified that she "did ask him when he was at the Agency in August of 2015, to do a drug screen, and he refused to do that at that point." She stated that in December 2015, Father "wanted to schedule a time and date to do that drug screen. But we don't usually do random drug screens that way, so we did not schedule anything at that point." Karen Wright, another MCCS case worker involved in Father's case, testified that Father refused to complete a drug screen in June 2016. According to Wright, Father "stated that he didn't feel like the Agency was working with him, and that we were - - that he had done everything that we had asked him to do, and that he was not going to comply with the drug screen or meet with me anymore."

{¶ 23} Given that Father did not obtain and maintain appropriate housing, and by his own admission, he continued to use marijuana, we agree with counsel for Father that the record supported the trial court's findings that housing and substance abuse were unresolved issues for Father, "rendering him incapable of adequately caring for the child," and those findings were not against the manifest weight of the evidence.

{¶ 24} Regarding Mother's assertion in her brief (which she subsequently acknowledged lacks merit) and Father's assertion in his pro se brief that MCCS's "failure to confirm adoption plans for the child [was] dispositive," the Supreme Court of Ohio has held:

> While it certainly may be helpful for a court to know the agency's

adoption plans, the court is not required to factor adoption possibilities into its analysis, and the agency will be bound to seek adoption for the child if permanent custody is granted regardless of whether the plans are filed before the motion is considered. Thus, interpreting R.C. 2151.413(E) to allow children-services agencies to update case plans to include adoption plans after permanent custody is granted does not lead to an illogical or absurd result, which we must avoid in construing statutes. * * *.

*In re. T.R.,* 120 Ohio St.3d 136, 2008-Ohio-5219, 896 N.E.2d 1003, ¶ 16.

{¶ 25} Finally, the decision of the juvenile court reflects that the court carefully considered the best interest factors in R.C. 2151.414(D)(1) and correctly concluded that the grant of permanent custody to MCCS was in M.W.'s best interest.

{¶ 26} Based upon the foregoing, Mother's and Father's assignments of error are overruled.

{¶ 27} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Sara M. Barry
Robert Brenner
Alan Gabel
Byron Shaw
Mark Wood
Hon. Helen Wallace